177 So.2d 460

**William J. RODGERS**

v.

**STATE.**

**1 Div. 982.**

Court of Appeals of Alabama.

March 23, 1965.

Rehearing Denied April 13, 1965.

Barry Hess, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

**CATES, Judge.**

Rodgers appeals from a judgment on verdict. He was convicted of carnal knowledge of a girl over twelve and under sixteen years of age, his own daughter. Code 1940, T. 14, § 399. He was sentenced to ten years imprisonment.

■ There was sufficient evidence to support the verdict, *first,* in the girl's testimony and, *second,* in a confession made by Rodgers to L. V. Harwell, an officer, and Mrs. Lorene Carter, a clerk, both of the Mobile City Police Department.

Here, we are urged to reverse on four propositions:

"A witness who does not know the difference between the truth and a lie is not a competent witness."

"The competency of a child to testify must be shown from the record of evidence in a case rather than from the private opinion or knowledge of the trial judge."

"A judgment of conviction cannot be based upon a coerced confession."

"A confession taken from a prisoner being illegally detained, without having being booked but in the police custody, without having bond set for his release on a non-capital charge without being advised of his right to counsel, where there is no evidence to show that the prisoner is an experienced criminal and where it is shown that he is illiterate, is a coerced confession the admission of which violates the Fourteenth Amendment * * *"

## I.

■ Our statute, which comes from the 1907 Code, is but expository of prior law, provides, " * * * children who do not understand the nature of an oath, are incompetent witnesses." Code 1940, T. 7, § 439.

Blackstone, iii Comm. 214, says " * * * there is no determinate age at which the oath of a child ought either to be admitted or rejected." McGuff v. State, 88 Ala. 147, 7 So. 35.

The prosecutrix lacked four days of being fourteen years old at the time of Rodgers's trial in the circuit court.

Here it is claimed that the State failed to show that she knew of the solemnity of the oath either from irreligiosity or youth, or on account of both.

Code 1940, T. 7, § 364, provides:

"§ 364. The sanction of an oath, or affirmation equivalent thereto, is necessary to the reception of any oral testimony. The court may frame such affirmation according to the religious faith of the witness."

The transcript of evidence shows that on the girl being "called on behalf of the State of Alabama, after having been first duly sworn by the Court, testified as follows: * * *"

In Wright v. State, 24 Ala.App. 378, 135 So. 636, this court (Bricken, P. J., and Rice, J., with Samford, J., dissenting) held that § 3 of the Constitution required the courts to admit testimony from an atheist.

Code 1940, T. 7, § 440, provides:

"§ 440. The court must, by examination, decide upon the capacity of one alleged to be incompetent from idiocy, lunacy, insanity, drunkenness, or infancy."

See Simmons v. State, 158 Ala. 8, 48 So. 606, as to voir dire.

McElroy, Evidence (2d Ed.), § 94.02(3), concludes that the trial judge's observation vis a vis of a child proposed as a witness confers in him a discretion necessarily his because the appellate court is without benefit of this opportunity.

State v. Morea, 2 Ala. 275, does not apply here because the witness was put on voir dire in court, not in chambers.

Wigmore, Evidence (3d Ed.), §§ 505–509, states the modern emphasis on a child's intelligence. McGuff, supra.

We consider the trial judge did not abuse his discretion in letting Rodgers's daughter be a witness. The Law has moved from oath to cross-examination as the means of getting to the truth of a case.

## II.

■ Appellant, under Propositions 3 and 4, argues that Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246, and Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, show the trial court was in error in receiving Rodgers's confession.

In brief, counsel state the controlling facts thus:

"Mr. Harwell * * * did not advise the Appellant of his right to counsel. * * * Appellant had not been offered the benefit of counsel at any time during his detention. * * * the Appellant was being illegally detained at the time of his alleged confession in that he had not been booked for any chargeable offense and no bond had been set for his release. * * * had never been taken before a committing Magistrate. * * * Appellant had [not] been advised that he had a constitutional right to make no statement at all. * * *"

Although not required to do so under Hopt v. People of the Territory of Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262, the State undertook in cross-examination of Rodgers to show that he was arrested at about 6:00 P.M. by two policemen. On arrival at the Mobile Police Station they carried Rodgers before the officer in charge who booked him in the docket room. Then he was taken upstairs and put in a cell.

The next morning at about 9:00 or 9:30 o'clock he was taken to Mr. Harwell. Rodgers claims he wanted to call his girl friend but Harwell wouldn't let him use the telephone.

Rodgers testified he was in Harwell's office about three hours in the course of which period he gave the confession. Mrs. Carter typed it from Harwell's copy.

Rodgers denied hearing Mrs. Carter read it back to him.

Rodgers did not elect to testify with the jury withdrawn on the voluntariness of his confession. Hence, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, is not pertinent.

Rodgers's claim of being incommunicado and asking for his girl friend came into evidence after the State had rested. Accordingly, voir dire taken up by his counsel on the State's calling Mr. Harwell had long since served its purpose.

In sum the State made out a prima facie case of a voluntary confession before the defense took over.

Culombe v. Connecticut, supra, and Fikes v. State of Alabama, supra, are different factually.

See Davis v. State, 42 Ala.App. 374, 165 So.2d 918, and Woodard v. State, ante p. 552, 171 So.2d 462.

The judgment below is due to be

Affirmed.

PRICE, P. J., not sitting.

### On Rehearing

CATES, Judge.

Rodgers's counsel earnestly claims Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, has the effect of voiding Rodgers's confession.

We cannot help but observe that the Fourteenth Amendment confession cases are gradually propelling the police to the brink

of observing the nine Judges' Rules used in England. See Archbold, Criminal Pleading, Evidence and Practice (35th Ed.), §§ 1118–1121.

Today Mr. Justice Frankfurter's language remains yet valid:

"* * * Due process does not demand of the States, in their administration of the criminal law, standards of favor to the accused which our civilization, in its most sensitive expression, has never found it practical to adopt. The principle of the Indian Evidence Act which excludes all confessions made to the police or by persons while they are detained by the police has never been accepted in England or in this country. Nor has the principle of the Scottish cases barring the use in evidence of a defendant's incriminating responses to police questioning at any time after suspicion has focused on him. Rather, this Court (in cases coming here from the lower federal courts), the courts of England and of Canada, and the courts of all the States have agreed in holding permissible the receipt of confessions secured by the questioning of suspects in custody by crime-detection officials. And, in a long series of cases, this Court has held that the Fourteenth Amendment does not prohibit a State from such detention and examination of a suspect as, under all the circumstances, is found not to be coercive." (Footnotes omitted.)—Culombe v. Connecticut, 367 U.S. 568, at 588, 81 S.Ct. 1860, at 1871, 1872. 6 L.Ed.2d 1037.

Rule 3 of the Judges' Rules reads:

"3. Persons in custody should not be questioned without the usual caution being first administered."

The usual caution is explicit that the detainee's statement not only can be used against him but also against anyone else, e. g., friends or relatives: "You are not obliged to say anything, but anything you say may be given in evidence."

Nothing, however, in the nine Rules relates to the right to advise with a solicitor. Archbold, supra (Cum.Supp. No. 8, Jan. 25, 1965), § 1119, points out that the Rules do not affect the distinct principle, viz:

"(c) That every person at any stage of an investigation should be able to communicate and to consult privately with a solicitor. This is so even if he is in custody provided that in such a case no unreasonable delay or hindrance is caused to the processes of investigation or the administration of justice by his doing so;"

Nevertheless, the editors state the paramountcy of a judicial enquiry as to the voluntariness of the confession, listing the following as the overriding principles:

"(e) That it is a fundamental condition of the admissibility in evidence against any person, equally of any oral answer given by that person to a question put by a police officer and of any statement made by that person, that it shall have been voluntary, in the sense that it has not been obtained from him by fear of prejudice or hope of advantage, exercised or held out by a person in authority, or by oppression."

### III.

Let us suppose, for the sake of argument, that in the instant case Rodgers had insisted on first talking to a lawyer. Then, had he confessed, would the circumstance of his having consulted counsel intensify the damnifying quality of his admission of guilt?

We doubt the admissibility of such a supposed incident. Hence—without other evidence of oppression—the mere fact of non-access to counsel is a circumstance of indifference.

The right of a person in custody to remain silent is formidable. Glanville Williams, Demanding Name and Address, 66 L.Q.Rev. 465.

We conclude counsel reads too much into verbal interstices of Escobedo. There Mr. Justice Goldberg opens for the majority:

"* * * the refusal by the police to honor petitioner's *request* to consult with his lawyer during the course of an interrogation [in "custody," at police headquarters] constitutes a denial of 'the Assistance of Counsel' * * * obligatory upon the States * * *." (Italics and bracketed matter added.)

This frame of reference we take to be words of limitation.

Application overruled.

PRICE, P. J., not sitting.